# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 21-56V
UNPUBLISHED

| | |
|---|---|
| ALICIA EDWARDS,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: September 11, 2023<br><br>Special Processing Unit (SPU); Ruling on the Record; Influenza (Flu); Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA,* for Petitioner.

*Benjamin Patrick Warder, U.S. Department of Justice, Washington, DC,* for Respondent.

## DECISION AWARDING DAMAGES[1]

On January 5, 2021, Alicia Edwards filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on January 22, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"), and entitlement was found in the Petitioner's favor on June 16, 2022. The parties reached on impasse on the appropriate award for pain and

---

[1] Because this unpublished ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

suffering from Ms. Edwards' injury, however, so the matter was submitted for an SPU "Motions Day" hearing.

For the reasons described below I find that Petitioner is entitled to compensation, and I award **$173,000.00** for actual pain and suffering, plus **$5,014.47** representing unreimbursed expenses.

## I.    Petitioner's Medical Records

A complete recitation of the facts can be found in the Petition, the parties' respective pre-hearing briefs, and in Respondent's Rule 4(c) Report.

Petitioner received a flu vaccine on January 22, 2020, in her left shoulder. Ex. 4 at 9. She first reported left shoulder pain on February 5, 2020, to an orthopedist at Tulsa Bone and Joint associates. Ex. 3 at 5-8. An examination showed reduced range of motion, weakness, and diffuse tenderness. *Id.* at 7. Petitioner was diagnosed with adhesive capsulitis and internal derangement of her left shoulder. *Id.*

On February 11, 2020, Petitioner began physical therapy and reported her pain as seven-to-nine out of ten. Ex. 3 at 13-16. Between February and March of 2020, Petitioner attended ten physical therapy sessions. Ex. 3 at 19-20. She reported a decease in pain, but continued mobility and strength deficits by her final session. *Id.*

Petitioner underwent an MRI on February 15, 2020, which revealed osteoarthritis, mild tendinosis, mild-to-moderate bursitis, and a labral tear. Ex. 3 at 10. She returned to Tulsa Bone and Joint due to increasing pain in her left shoulder on February 19, 2020, and received a steroid injection at that time. Ex. 3 at 17-19.

On August 5, 2020, Petitioner presented to Dr. Peterson, an orthopedic surgeon, complaining of continued shoulder pain and stiffness. Ex. 3 at 26-28. She underwent manipulation under anesthesia and was revaluated for physical therapy on August 20, 2020. Ex. 3 at 29, 25-28. Between August and October of 2020, Petitioner attended sixteen physical therapy sessions. Ex. 16 at 5-8.

A second MRI on October 21, 2020, revealed mild osteoarthritis, fraying of the anterior and anterosuperior labrum, among other findings. Ex. 6 ay 17-18. Petitioner underwent arthroscopic surgery on November 12, 2020, that included bicep tenotomy, labral debridement, subacromial decompression, manipulation to release scar tissue, and debridement of the capsule. Ex. 13 at 15.

Thereafter, Petitioner attended twenty-seven physical therapy sessions, and was discharged on March 23, 2021. At that time, she reported pain levels of two-to-three out of ten. Ex. 16 at 57-58.

Petitioner's final appointment with Dr. Peterson was on May 6, 2021. At that time, she still exhibited reduced range of motion, but had good function of her rotator cuff and no signs of impingement. Ex. 16 at 59-61.

## II.     Affidavit Evidence

Petitioner submitted two affidavits in support of her claim. Ex. 17, 18. Therein, Petitioner describes her injury and course or treatment, and how her injury impacted her life. Petitioner's husband, James Todd Kirk, also submitted an affidavit in support of Ms. Edwards. Ex. 19. Mr. Kirk provided additional descriptions of how Petitioner's injury impacted her life.

## III.    Damages

The sole contested damages component to be decided is pain and suffering. Petitioner filed a memorandum in support of damages on August 8, 2022, seeking $190,000.00 for pain and suffering and $5,014.47 for unreimbursed expenses. Petitioner's Brief in Support of Damages ("Pet. Br."), ECF No. 35. Respondent reacted with his own brief on September 29, 2022, arguing that $120,000.00 is an appropriate amount for pain and suffering, but not disputing the unreimbursed expenses. Respondent's Brief Addressing Damages ("Res. Br."), ECF No. 37. Petitioner filed a reply on September 6, 2022. Petitioner's Brief in Support of Damages ("Reply"), ECF No. 39.

## IV.    Legal Standards for Damages Awards

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within the SPU. I fully adopt and hereby incorporate my prior discussion in Sections III and IV of *Leslie v. Sec'y Health & Hum. Servs*., No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) and *Johnson v. Sec'y of Health & Hum. Servs.,* No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021), as well as Sections II and III of *Tjaden v. Sec'y of Health & Hum. Servs.,* No. 19-419V, 2021 WL 837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related

injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[3]

## V.     Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including all medical records, declarations, plus all filings submitted by both Petitioner and Respondent. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Ms. Edwards asserts that the severity of her injury is comparable to six cases awarding between $195,000.00 and $200,000.00 for pain and suffering. *See,* e.g., *M.W. v. Sec'y of Health and Hum. Servs.*, No. 18-267V, 2021 WL 3618177 (Fed. Cl. Spec. Mstr. March 17, 2021 (awarding $195,000 in pain and suffering); *Meirndorf v. Sec'y of Health and Hum. Servs.*, No. 19-1876V, 2022 WL 1055475 (Fed. Cl. Spec. Mstr. March 7, 2022) (awarding $200,000 for pain and suffering). In particular, Petitioner emphasizes that she suffered a moderate SIRVA with significant pain, and treated through extensive physical therapy, two steroid injections, two MRIs, and two surgeries (one manipulation under anesthesia and one arthroscopic procedure). Mot. at 9-11. She thus deems $190,000.00 a fair sum for actual pain and suffering.

Respondent, by contrast, submits that an award of $120,000.00 is more appropriate. Opp. at 5-11. Petitioner's first procedure was non-invasive, and her course of treatment was not as extensive or severe as in the cases cited in support of her damages request. *Id.* at 9-11. Respondent cites to two cases that found $125,000.00 as appropriate pain and suffering awards in SIRVA cases. *Reynolds v. Sec'y of Health and Hum. Servs.*, No. 19-1108V, 2021 WL 3913938 (Fed. Cl. Spec. Mstr. July 29, 2021) (awarding $125,000.00 for pain and suffering). *Roberson v. Sec'y of Health and Hum. Servs.*, No. 19-90V, 2020 WL 5512542 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding

---

[3] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

4

$125,000.00 for pain and suffering).

Based on the medical records, I conclude that Ms. Edwards suffered a mild-to-moderate SIRVA for approximately eighteen months. She sought treatment soon after her vaccination, and initially her pain was mostly reported as moderate to severe (seven-to-nine out of ten) for the first several months. Petitioner's initial, conservative treatment was unsuccessful, and she ultimately underwent manipulation under anesthesia in August of 2020 and arthroscopic surgery in November of 2020.

Petitioner made good progress in her recovery, and by March 23, 2021, Petitioner reported pain levels between two and three out of ten and had either met, or was 95% to meeting, her recovery goals. Ex. 16 at 55-58. By May 6, 2021, her orthopedic surgeon noted that she had regained much of her range of motion and showed no signs of impingement. Ex. 16 at 59-61. Her course of treatment consisted of three rounds of physical therapy (totaling fifty-three sessions), two MRIs, two steroid injections, manipulation under anesthesia, and arthroscopic surgery.

The overall severity of the injury at issue herein is thus not high enough to justify the $190,000.00 requested by Petitioner in her motion. I note that the SIRVA cases cited by Petitioner, *M.W.* and *Meirndorf,* involved injuries that continued for a longer period of time and more involved treatment. In *M.W.* petitioner had two surgeries, 71 physical therapy sessions over four years. *M.W.*, 2021 WL 3618177, *4. In *Meirndorf*, petitioner had two surgeries, 79 physical therapy sessions, and additional treatments over three years. *Meirndorf*, 2022 WL 1055475, at *2. However, Petitioner's course of treatment warrants more than the $120,000.00 requested by Respondent. I agree that the manipulation under anesthesia is not as severe as arthroscopic surgery, but it deserves more value than other, less-invasive procedures.

I find this case most analogous to *Rice-Hansen v. Sec'y of Health & Hum. Servs.*, No. 20-1338V, 2022 WL 18339478, at *1 (Fed. Cl. Dec. 9, 2022) (awarding $175,000 for pain and suffering). In *Rice-Hansen*, Petitioner underwent arthroscopic surgery, manipulation under anesthesia, three rounds of physical therapy (totaling 40 session), and a cortisone injection over twenty-six months. While *Rice-Hansen* involved a longer treatment period, Ms. Edwards had more physical therapy. However, Ms. Edwards also showed a good prognosis and no subsequent treatment after May 6, 2021.

Taking all of the above into account, I find that $173,000.00 for pain and suffering is fair compensation – slightly less than, but close to, the sum awarded in *Rice-Hansen*.

**Conclusion**

**For all the reasons discussed above, and based on consideration of the records as a whole, I award Petitioner a lump sum payment of $178,014.47 (representing an award of $173,000.00 for past pain and suffering, and unreimbursed expenses of $5,014.47) in the form of a check payable to Petitioner.**

This amount represents compensation for all items of damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[4]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.